```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL DOBSON,

                        Plaintiff,
                                                5:12-CV-0190
v.                                              (GTS/ATB)

PARSONS CORP.,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

MICHAEL DOBSON
  Plaintiff, Pro Se
9200 Gold Dust Court-J
Laurel, MD 20723

JACKSON LEWIS LLP                               GREG A. RIOLO, ESQ.
  Counsel for Defendant                         MATTHEW H. WOODARD, ESQ.
One North Broadway, Suite 1502
White Plains, NY 10601

GLENN T. SUDDABY, United States District Judge
```

## DECISION and ORDER

Currently before the Court, in this employment discrimination action by Michael Dobson ("Plaintiff") against Parsons Corporation ("Defendant"), is Defendant's motion, pursuant to Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, to confirm an arbitration opinion and award (the "Award") rendered by an arbitrator of the American Arbitration Association ("AAA") on January 16, 2013, against Plaintiff. (Dkt. No. 23.) For the reasons set forth below, Defendant's motion is granted, the Award is confirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Relevant Factual History

Defendant hired Plaintiff on April 11, 2011, to commence work on May 2, 2011, as a Quality Control Manager. (Dkt. No. 23, Attach. 4 [Ex. C to Woodard Affirm., attaching Arbitration Award].) On or about May 3, 2011, Plaintiff signed an agreement to participate in Defendant's Employee Dispute Resolution Program ("EDRP"), which specifically declared him to be an employee-at-will. (*Id.*)

When he was hired, Plaintiff was to work on a project being performed by Defendant on behalf of Honeywell International, Inc., in a program to clean up on Onondaga Lake. (*Id.*) This project had several sub-parts that the parties referred to by their acronyms: the Sediment Management System ("SMS"); the Sediment Consolidation Area ("SCA"); and the Sediment Processing Area ("SPA"). (*Id.*) Plaintiff worked as the Quality Control Manger on the SCA and SMS projects; and, at various times, he reported to Al Steinhoff on the SCA project, and Paul Blue on the SMS project. (*Id.*) Plaintiff was laid off from Defendant effective January 3, 2012, (purportedly) due to lack of work. (*Id.*)

Plaintiff alleges that he was laid off because he brought to the attention of his managers the fact that certain forms should be filled out describing to both Honeywell and the regulatory agencies that there were non-conformances found on the project on which he worked. (*Id.*) Plaintiff alleges that, after bringing these matters to the attention of his supervisors, they did nothing to respond to his concerns and, instead, filed disciplinary charges against him and ultimately laid him off. (*Id.*) Plaintiff alleges that both the "disciplinary write-ups" and the ultimate layoff were in retaliation for having raised the concerns about documentation on the job.

(*Id.*) He alleges that the conclusion that he was the victim of retaliation is further supported by the fact that no one else connected with the job was laid off in December 2011 as part of the purported winding down of the construction season due to weather. (*Id.*)

Defendant, on the other hand, asserts that Plaintiff was not subject to any disciplinary proceeding. (*Id.*) Defendant asserts that, while Plaintiff was written up and given counseling based on two instances of unprofessional communications with others on the job site in September 2011, he was not subjected to "discipline." (*Id.*) Defendant asserts that it attempted to find additional placements or reassignments for Plaintiff when the construction project was concluded due to both completion of portions of the project, as well as inclement weather that prevented construction from taking place in Syracuse during the winter months. (*Id.*) Defendant asserts that another assignment could not be found to match Plaintiff's skill set and, in fact, his position was never replaced on the Onondaga Lake Project. (*Id.*)

Defendant asserts that it did not violate the New York State Labor law, nor did it retaliate against Plaintiff. (*Id.*) Defendant asserts that Plaintiff did not disclose any activity by Defendant that was in violation of the law and presented a danger to public health or safety. (*Id.*) Defendant asserts that, at most, Plaintiff is alleging that Defendant had an obligation to fill out certain forms as a result of its contract with Honeywell. (*Id.*) Defendant asserts that is had no such obligation, and that Honeywell's other contractors on the job site (as well as the New York State Department of Environmental Conservation or "DEC") also saw no reason for the forms to be filled out. (*Id.*) Defendant asserts that Plaintiff was not subjected to retaliation of any sort, nor was he a "whistleblower" under the labor law. (*Id.*) Rather, asserts Defendant, Plaintiff was laid off when there was no work for him to do. (*Id.*)

### B. Arbitration Award

On April 16, 2012, this action was stayed pending completion of arbitration of the claims asserted in Plaintiff's Complaint pursuant to the terms of Defendant's EDRP. (Dkt. No. 23, Attach 1 at ¶ 3 [Woodward Affirm.].) The parties selected the AAA as the forum in which to conduct their arbitration, and agreed to the appointment of Ms. Bonnie Siber Weinstock as the Arbitrator. (*Id.* at ¶¶ 4-5.) On January 17, 2013, the AAA issued Arbitrator Weinstock's Opinion and Award, dated January 16, 2013, which denied all of Plaintiff's claims for relief. (*Id.* at ¶ 8.) Specifically, the Arbitrator's Award provided as follows: (1) it denied all of Plaintiff's claims and held that the Defendant did not violate New York Labor Law § 740; (2) it held that the administrative fees and expenses of the AAA (totaling $1,700.00) and the compensation and expense of the Arbitrator (totaling $15,800.00) shall be borne as incurred; (3) it ruled that the Award is "in full settlement of all claims and counterclaims submitted to this Arbitration Tribunal;" and (4) it denied all claims not expressly granted herein. (*Id.* at ¶ 9.)

### C. Parties' Arguments on Defendant's Motion

Generally, in his motion to confirm an arbitration award, Defendant argues that the Award should be confirmed because (1) the parties expressly agreed to final and binding arbitration of the claims asserted in this case, (2) the arbitration was conducted fairly, reasonably and properly, and (3) an award was issued that resolved all claims in favor of Defendant. (*See generally* Dkt. No. 23, Attach. 1 and 5 [Def.'s Affirm. and Memo of Law.].)

Generally, liberally construed, Plaintiff's two-page response argues that the Court should not confirm the Award and should instead permit Plaintiff's claim to proceed to trial for the following seven reasons: (1) the arbitration proceeding were neither speedy nor impartial, as

required by the EDRP; (2) for example, the Arbitrator was partial (and guilty of misconduct and/or manifest disregard of the law) in that (a) she frequently stopped Plaintiff's line of questioning, preventing him from obtaining the necessary information from the witnesses, and (b) she prevented Plaintiff from demonstrating that the construction projects to which he was assigned remained ongoing when he was laid off; and (3) in addition, the Arbitrator was partial (and imperfectly executed her powers and/or manifestly disregarded the law) in that (a) she refused to acknowledge the possibility that a train derailment could constitute a danger to the public health or safety for purposes of analyzing his whistleblower retaliation claim under New York Labor Law § 740, (b) she mistakenly stated in her decision that Defendant sent Plaintiff on interviews in an attempt to find him work before he was laid off (which Plaintiff contends never happened), (c) she minimized, if not ignored, the fact that Defendant conducted an incomplete investigation of the purportedly "unprofessional way" in which Plaintiff "communicated with others," and (d) she failed to raise any issue about "derogatory statements" that Defendant's managers allegedly made about him. (*See generally* Dkt. No. 24 [Plf.'s Opp'n Memo of Law].)

In reply, Defendant asserts the following three arguments: (1) the arbitration proceeding was sufficiently speedy for purposes of the EDRP and FAA because a decision was issued in seven months and both parties were given ample opportunity to present their cases within that time period; (2) there was no partiality, misconduct, imperfect execution of powers, or manifest disregard of the law by the Arbitrator because (a) Plaintiff, as a *pro so* litigant, occasionally questioned witnesses regarding information that was not relevant or material to issues in the case, (b) having the witnesses leave the room while the Arbitrator obtained clarification from Plaintiff, or correctly explained to him why his line of questioning was irrelevant or improper,

5

helped to prevent the witnesses from developing bias or prejudice against Plaintiff, (c) Plaintiff did not proffer any evidence regarding a train derailment throughout the case, and instead focused on establishing that Defendant failed to comply with an obligation to report contractual non-conformances, (d) Plaintiff was given ample opportunity to question Defendant's witnesses at the arbitration hearing, (e) according to the evidence, Defendant made several efforts to find Plaintiff other work within the Company before the decision to lay him off was made, (f) a proper investigation was performed by Defendant that resulted in the conclusions that Plaintiff used intimidating and aggressive behavior, and (g) the Arbitrator specifically addressed the issue of "derogatory statements" in a footnote; and (3) Plaintiff's response largely ignores the arguments in Defendant's original motion papers. (*See generally* Dkt. No. 25 [Def.'s Reply to Plf.'s Opp'n Memo. of Law.].)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing Review of Arbitration Award

"The review of arbitration awards is generally governed by the FAA." *In re Arbitration Before New York Stock Exch., Inc.*, 04-CV-0488, 2004 WL 2072460, at *5 (S.D.N.Y. Sept. 8, 2004) (citing *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 201 [2d Cir.1998], *cert. denied*, 526 U.S. 1034 [1999]). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997). "Pursuant to 9 U.S.C. § 9, any party to an arbitration may apply to a federal court for an order confirming the award resulting from the arbitration, and the court 'must grant . . . an order [confirming the arbitration award] unless the award is vacated,

modified, or corrected as prescribed in sections 10 and 11 of this title.'" *In re Arbitration Before New York Stock Exch., Inc.*, 2004 WL 2072460, at *5 (quoting 9 U.S.C. § 9) (other citations omitted).

"The Court of Appeals for the Second Circuit 'adhere[s] firmly to the proposition . . . that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.'" *Id*. (quoting *Landy Michaels Realty Corp. v. Local 32B-32J*, 954 F.2d 794, 797 [2d Cir.1992]) (other citations omitted).

> The FAA provides that an arbitration award may be vacated: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id*. at *5-6 (quoting 9 U.S.C. § 10[a]).

"The burden of establishing the existence of one of the grounds for vacatur rests with the party seeking that form of statutory relief." *Id*. at *6 (citing *Willemijn Houdstermaatschappij*, 103 F.3d at 12) (other citations omitted).

"In addition to the statutory grounds stated in the FAA, the Second Circuit has recognized that an arbitration award may be vacated 'if it is in manifest disregard of the law.'" *Id*. (quoting *Halligan*, 148 F.3d at 202) (other citations omitted). "Manifest disregard clearly means more than error or misunderstanding with respect to the law." *Id*. (citations omitted). "To vacate an arbitration award on the grounds of manifest disregard of the law, 'a reviewing court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it

7

or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.' " *Id*. (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000) (other citations omitted). "Where there is a 'colorable justification' or a 'rational basis' for an award, it is not in 'manifest disregard of the law.'" *Id*. (citations omitted). "Review of arbitration awards for manifest disregard is 'severely limited.'" *Id*. (citations omitted).

### III. ANALYSIS

After carefully considering the matter, the Court finds that the Arbitration Award should be confirmed for the reasons stated by Defendant in its motion papers. (Dkt. Nos. 23, 25.) The Court would add only the following analysis.

As an initial matter, the Court finds, based on the current record, that Plaintiff voluntarily signed the EDRP agreement. Moreover, the Court finds that the EDRP agreement is clear on its face, and expressly states that those signing it agree to "mandatory arbitration provisions." (Dkt. No. 23, Attach. 3 [Ex. B to Woodard Affirm.].) As a result, the Court finds that the Arbitrator had jurisdiction to preside over the parties' dispute.

Furthermore, the Court rejects Plaintiff's argument that the Award was faulty because the arbitration was neither "speedy" nor "impartial." The record establishes that a decision was rendered by the Arbitrator within seven months, which the Court finds to be sufficiently prompt under the circumstances. (Dkt. No. 23, Attach. 2 [Ex. A to Woodard Affirm.]; Attach. 3 [Ex. C to Woodard Affirm.].)

Moreover, based on the current record, the Court finds that there was a colorable justification or a rational basis for the Award. For example, there is evidence in the record that supports the following facts: (1) Plaintiff was counseled for his behavior towards subcontractor

employees on the construction, and counseled to communicate in a professional manner that required attendance in anger management training; (2) the PCR was not a reaction to anything that Plaintiff may have said about quality control issues and was not a reaction to anything Plaintiff wrote in a document about the Company's response to his allegations of undocumented non-conformances; (3) Plaintiff was laid of due to a lack of work, and the complaints raised by Plaintiff and the criticisms of his performance were not the cause of his layoff; (4) after Plaintiff's layoff, no other individual was assigned or hired to be the Quality Control Manager on the job site; and (5) a good-faith effort was made by the Company to find a position to which Plaintiff could be reassigned so as to avoid his layoff.

Finally, the Court is satisfied with the performance of the Arbitrator. For example, the record establishes that Plaintiff was given ample opportunity to present his case, and that removing the witnesses from the room while the Arbitrator obtained clarification from (or provided explanation to) Plaintiff helped prevent the witnesses from developing any bias or prejudice against Plaintiff. Moreover, Plaintiff did not offer sufficient evidence regarding a train derailment in his case, and a review by other parties concluded there was no possibility of derailment.

For all of these reasons, the Court confirms the Arbitration Award.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to confirm the arbitration award (Dkt. No. 23) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Arbitration Award (Dkt. No. 23, Attach. 4) in **<u>CONFIRMED</u>**; and it is further

9

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendant in conformance with the Arbitration Award; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 30, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge